UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10130-RWZ

UNITED STATES OF AMERICA

v.

CLIVE MCFARLANE

MEMORANDUM OF DECISION

December 5, 2005

ZOBEL, D.J.

On April 28, 2005, Brockton police officer David Delehoy was driving to work in his own car. While stopped at a stoplight, he heard loud noises that he believed to be gunshots. He looked in the direction of the gunshots and observed a group of approximately eight individuals in an empty parking lot. He immediately turned the corner, drove toward the parking lot and saw an individual (hereinafter, "A") run from the area of the group. After losing sight of for a matter of moments when some buildings blocked his sight line, Officer Delehoy recognized A walking away quickly. He then witnessed a second person, later determined to be defendant Clive McFarlane, walking rapidly about 150 feet behind A. Officer Delehoy saw A look over his shoulder, apparently spy defendant and instantly begin sprinting. As A cut across a barren lot next to a house, Officer Delehoy followed him in his vehicle, never losing sight of him, and when he caught up with A, offered help. When A stopped running, Officer Delehoy identified himself as a Brockton police officer and ordered him to show his hands.

According to Officer Delehoy, A appeared relieved and reported that defendant was attempting to shoot him.  Defendant now rounded the corner and approached the barren lot, apparently without having noticed Officer Delehoy's presence. Officer Delehoy observed defendant remove the cover to a trash can next to the house, take out the can liner, bend into the can with both arms, replace the liner and leave.  Officer Delehoy decided that defendant posed a more significant threat than did A and therefore drew his weapon and ordered defendant to raise his hands and lie on the ground.  After backup officers arrived, he investigated the trash can opened by defendant.  He found a revolver beneath the liner and authorized defendant's arrest.

Defendant now moves to suppress all evidence on the basis that Officer Delehoy had neither reasonable suspicion nor probable cause to stop him.  The government argues that the totality of circumstances leading up to the arrest sufficiently established probable cause for defendant's arrest and, at a minimum, demonstrated reasonable suspicion for a brief, investigative stop, known as a Terry stop.  See Terry v. Ohio, 392 U.S. 1 (1968).  The parties argued their respective positions further in a suppression hearing before the court on November 30, 2005.

"[A]n officer may conduct a brief investigatory stop if he has a reasonable, articulable suspicion that criminal activity is afoot."  U.S. v. Romain, 393 F.3d 63, 71 (1st Cir. 2004).  In determining whether reasonable suspicion exists, a law enforcement officer may rely on both personal observations and "information furnished by others" if such information "carries 'sufficient indicia of reliability' to warrant acting upon it."  Id. (internal citations omitted).  Decisions should not be based on "gossip or innuendo"

but, instead, should reflect an "examination of all the circumstances bearing upon the tip itself and tipster's veracity, reliability, and basis of knowledge." Id.  For example, a "face-to-face encounter provides police officers the opportunity to perceive and evaluate personally an informant's mannerisms, expressions, and tone of voice (and thus to assess the informant's veracity more readily than could be done from a purely anonymous telephone tip)." Id. at 73. "A court inquiring into the validity of a Terry stop must use a wide lens and survey the totality of the circumstances," bearing in mind that the "touchstone is reasonableness." Id. at 71.

Defendant argues that reasonable suspicion did not support his arrest, because Officer Delehoy relied upon a tip from A, "an unknown, unaccountable man who himself was under surveillance and who when out of the detective's sight could have put the gun in the trashcan." (Def.'s Mem. of Law in Support of Mot. 9).  Defendant's characterization of A fails, however, to account for Officer Delehoy's own observations and his credible testimony that he heard what he believed to be gunshots, that he witnessed a group of individuals in the area from where the gunshots emanated, and that he then saw the first individual flee the group while being apparently followed by defendant.  Based on these observations, his years of experience as an officer, and his knowledge that violent crimes often occurred in that neighborhood, Officer Delehoy formed a reasonable opinion that defendant was chasing A, and A's manner "suggested a likelihood that [he] was concerned for [his] own safety." Romain, 393 F.3d at 73. A's "willingness to reconfirm" Officer Delehoy's own perception of the events, "under circumstances that might immediately reveal its truth or falsity, suggests

3

a higher degree of reliability than a wholly anonymous telephone call." Id.  If A was lying to Officer Delehoy, he risked swift reprisal since defendant was continuing to pursue him and fast approached their meeting.  Having himself watched the activity following the gunshots, Officer Delehoy knew that A "acquired [his] information through first-hand observation." Id.  This direct interaction allowed Officer Delehoy "to gauge [A's] veracity and to make some informed assessment of the reliability of the tip." Id. at 74.  Although defendant argues in his brief that A himself may have placed the weapon in the trash can, he fails to reconcile this assertion with Officer Delehoy's testimony that he never lost sight of A and never saw him open the trash can.

Upon stopping defendant, Officer Delehoy detained him for a matter of moments until back-up arrived, and he had an opportunity to investigate the trash can.  He testified that he arrested defendant after finding the weapon.  Although defendant argues that the detention itself effectively constituted an arrest, since defendant perceived that he was under arrest, his perception alone does not render unreasonable Officer Delehoy's suspicion that defendant may be armed and dangerous.  "It cannot be said that a display of a gun by a police officer automatically converts a stop into an arrest." U.S. v. Trullo, 809 F.2d 108, 113 (1st Cir. 1987).  Officer Delehoy's fear for his own safety and that of others adequately justified the brief detention and scope of police activity surrounding defendant's eventual arrest.

Accordingly, reasonable suspicion supported the stop, and analysis of probable cause is unnecessary.  Defendant's motion to suppress (# # 9 and 10 on the docket) is denied.

```
_____        /s/ Rya W.Zobel
       DATE                     RYA W. ZOBEL
                                UNITED STATES DISTRICT JUDGE
```